**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TERRY A. BAIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.  12-cv-8234 |
| | ) |
| ROHR-MONT MOTORS, INC., d/b/a | ) |
| Oakbrook Toyota in Westmont, an Illinois | ) |
| corporation, JOHN BARRETT, and ALEX | ) |
| SYED, | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Plaintiff Terry Baier ("Baier," or "Plaintiff") filed a complaint against his former

employer, Rohr-Mont Motors, Inc. d/b/a Oakbrook Toyota in Westmont ("Oakbrook Toyota"),

and his former supervisors, John Barrett ("Barrett") and Alex Syed ("Syed") (collectively,

"Defendants")[1] alleging violations of the Family and Medical Leave Act of 1993 (the "FMLA"),

29 U.S.C. §§ 2601 *et. seq.* (Count I); the Americans with Disabilities Act of 1990 (the "ADA"),

42 U.S.C. §§ 12101 *et seq.* (Count II); and the Age Discrimination in Employment Act (the

"ADEA"), 29 U.S.C. §§ 621 *et seq.* (Count III).  Baier also alleges common-law defamation

(Count IV).

---

[1] Baier alleges Count I against all Defendants, Counts II and III solely against Oakbrook Toyota, and Count IV against Oakbrook Toyota and Barrett.

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on all four counts.[2]  For the following reasons, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

### I.      Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 924 (7th Cir. 1994)).  Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009) (quoting L.R. 56.1(a)(3)).  The nonmoving party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (quoting L.R. 56.1(b)(3)(B)).  The nonmoving party also may submit a separate statement of additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support those facts. *See* L.R. 56. 1(b)(3)(C); *see also Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 643–44 (7th Cir. 2008).

---

[2] Defendants also move for summary judgment specifically on Defendants' threatened demotion of Plaintiff.  *See* (R. 63, Def.'s Am. Memo of Law, at 6-10).  As Plaintiff notes in his response, Plaintiff does not allege a separate cause of action for his threatened demotion, so the Court does not address that issue.

## II.     Relevant Facts

Oakbrook Toyota hired Baier as an automobile sales associate in August 2005.  (Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶ 80.)  After several promotions and transfers between dealerships owned by Bob Rohrman (and after Baier briefly left to work for an outside dealership), Oakbrook Toyota requested that Baier return to work as General Sales Manager ("GSM") in December 2007.  (*Id*.)  Plaintiff accepted, and remained in that position until the events giving rise to this action commenced.  (*Id*.; Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 17.)

On or about September 28, 2011, Baier suddenly began having chest pains.  (Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶ 89.)  He went to a physician who diagnosed him with a damaged aortic valve, and the hospital immediately admitted him in order to keep him stable.  (*Id*.)  On or about October 1, 2011, Plaintiff underwent open heart surgery, which was to be followed by approximately twelve weeks of rehabilitation.  (*Id*. ¶ 90.)  Plaintiff requested leave from Oakbrook Toyota under the Family Medical Leave Act in order to recover and rehabilitate after his surgery.  (*Id*. ¶ 91.)  On or about October 26, 2011, Plaintiff returned to work with a visible heart pack containing a defibrillator that his doctors required him to wear.  (*Id*. ¶¶ 96; 104.)  From there, the parties dispute many of the relevant facts.[3]

Plaintiff alleges the following: He returned to work with restrictions, including that he would work for only limited periods of time and that he would limit his total weekly hours and continue his rehabilitation.  (*Id*. ¶ 96.)  He notified Oakbrook Toyota of his work restrictions—he provided it with letters from his physician, and verbally explained his limited work hours to his

---

[3] In their Reply, Defendants request that the Court disregard a number of Plaintiff's responses to Defendants' L.R. 56.1 Statement of Material Facts because they improperly set forth additional non-responsive assertions.  (R. 73, Def.'s Reply, at 2-3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (affirming district court's discretion to require strict compliance with Northern District of Illinois Local Rule 56.1).  The Court declines to do so, given: 1) the responsive nature of Plaintiff's responses; and 2) the fact that Plaintiff submitted a separate section containing a number of additional statements of material fact.

supervisor Alex Syed. (*Id*. ¶¶ 97, 98; Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 9.)

Nevertheless, Syed felt he had no obligation to make sure that Plaintiff did not work more than 40 hours per week, and Syed left Baier to run the store after hours. (Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶¶ 100-101.) He repeatedly asked Baier how long it would take until he was "100 percent," and when Baier complained to Syed about having to work until midnight, Syed replied, "that's your job." (Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶ 103; Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 44, 50.) When Syed went out of the country on vacation beginning November 4, 2011, John Barrett filled in as Baier's supervisor. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 9-13.) Shortly afterwards Barrett told Baier, "don't die at the desk or I am going to drag you outside and throw you in the ditch next to the road." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 71.)

Plaintiff further alleges that on November 8, 2011, Bob Rohrman came into the dealership and abruptly threatened to demote Plaintiff, knowing he had just returned from his medical absence. (*Id*. ¶ 31.) Plaintiff was shocked. (*Id*. ¶ 22.) Until then, he had never been reprimanded or otherwise disciplined. (*Id*. ¶ 29; Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶ 105.) When Plaintiff arrived at work the next day, expecting to receive his demotion papers, Barrett abruptly fired him. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 60.) Plaintiff claims that Barrett fired him solely based on Barrett's false accusation that Baier used profanity with a new salesperson. (*Id*. ¶¶ 59-60.)

Defendants dispute almost all of Plaintiff's factual account. They claim that Oakbrook Toyota welcomed Baier back following his medical leave and returned him to his General Sales Manager position. (Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 42.) Plaintiff scheduled his own hours and did not need anyone's permission to leave work for any personal or business reason.

(*Id.* ¶ 44.)  At no point did Plaintiff ever express any difficulty in attending his medical appointments due to work-related commitments, nor did he lodge any complaints with Oakbrook Toyota that his supervisors harassed him due to his condition.  (*Id.* ¶¶ 48, 50.)

Defendants further argue that prior to Baier's medical absence, numerous employees complained to Oakbrook Toyota management about Baier's conduct in the workplace, including Baier's use of profanity and ethnic slurs.  (*Id.* ¶¶ 56-58.)  Bob Rohrman, the owner of Oakbrook Toyota, took notice that Baier's sales were declining, and considered demoting him in September 2011 when Baier was unable to answer critical sales questions.  (*Id.* ¶¶ 31, 35 37; Def.'s Resp. to Pl.'s L.R. 56.1 Stmt. of Add'l Material Facts ¶ 79.)  On November 8, 2011, unaware that Plaintiff had recently returned from FMLA leave, Rohrman made the decision to demote Plaintiff.  (Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 35, 38, 67-68.)  That same week, Barrett witnessed Baier make unprofessional and profane statements to Frank Trout.  (*Id.* ¶ 59.)  Based on Barrett's belief that Baier had a record of substandard behavior, including the use of profanity, Barrett made the decision to terminate Plaintiff.  (*Id.* ¶¶ 52-53, 59-60.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining summary judgment motions, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014).  "The party seeking summary judgment bears the burden of establishing that there is no genuine dispute as to any

material fact." *Kvapil v. Chippewa County, Wis.*, 752 F.3d at 712 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the opposing party "must establish some genuine issue for trial such that a reasonable jury could return a verdict in [their] favor." *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (quoting *Gordon v. FedEx Freight, Inc*., 674 F.3d 769, 772-73 (7th Cir. 2012)).

## ANALYSIS

### I.    Count I – FMLA Claims

"The FMLA entitles an employee to twelve weeks of leave every twelve-month period if [he] is afflicted with 'a serious health condition' which renders [him] unable to perform [his] job." *Smith v. Hope Sch.,* 560 F.3d 694, 699 (7th Cir.2009) (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA further provides that employers "may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise' any FMLA rights." *Nicholson v. Pulte Homes Corp*., 690 F.3d 819, 825 (7th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(1)). Employers also may not retaliate against an employee for exercising his FMLA rights. *Id*. (citing 29 U.S.C. §§ 2615(a)(2), (b)). "An interference claim requires proof that the employer denied the employee FMLA rights to which [he] was entitled; a retaliation claim requires proof of discriminatory or retaliatory intent." *Id*. Baier brings both an FMLA interference claim and a retaliation claim. The Court addresses each claim in turn.

#### A.    FMLA Interference Claim

"To prevail on an FMLA interference claim, an employee must show that: (1) [he] was eligible for FMLA protection; (2) [his] employer was covered by the FMLA; (3) [he] was entitled to leave under the FMLA; (4) [he] provided sufficient notice of [his] intent to take FMLA leave; and (5) [his] employer denied [him] the right to FMLA benefits." *Id*.; *see Brown*

*v. Auto. Components Holdings, LLC*, 622 F.3d 685, 689 (7th Cir. 2010). Here, Defendants move for summary judgment solely on the fifth element, that they did not deny Baier the right to any FMLA benefits.[4] In response, Plaintiff argues that Defendants denied him intermittent leave to work a 40 hour week, and that Defendants denied him full restoration to his General Sales Manager position because they fired him shortly after his reinstatement.

### 1.    Intermittent Leave

First, Baier argues that Defendants denied him the right to intermittent leave to work a 40-hour work week. The Code of Federal Regulations defines "intermittent leave" as "FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a). What Baier appears to be arguing is not that he was denied "intermittent leave" to work a 40 hour week, but instead that he was denied a "reduced leave schedule."[5] A "reduced leave schedule" is defined as "a leave schedule that reduces an employee's usual number of working hours per workweek." *Id.*; *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 765 (7th Cir. 2008). "An example of an employee taking leave on a reduced leave schedule is an employee who is recovering from a serious health condition and is not strong enough to work a full-time schedule." 29 C.F.R. § 825.202(b)(1). "Leave may be taken intermittently or on a reduced leave schedule when medically necessary…for recovery from…a serious health condition." 29 C.F.R. § 825.202(b).

---

[4] All three Defendants move for summary judgment on Count I. The Court addresses the Defendants' joint summary judgment arguments on Count I in Sections I.A and I.B. The Court addresses Syed's Count I summary judgment argument on his individual FMLA liability in Section I.C. Barrett does not make an independent summary judgment argument based on his individual liability.

[5] Defendants argue that Plaintiff cannot claim that they denied him intermittent leave to work a 40-hour work week because "intermittent leave" has a specific statutory definition that does not include the right to work a limited number of hours in a week. Defendants' argument ignores Plaintiffs ability to take a "reduced leave schedule," which like "intermittent leave," is defined in 29 C.F.R. § 825.202 ("Intermittent leave or reduced leave schedule.")

Viewing the facts in the light most favorable to Baier and drawing all reasonable inferences in his favor, as the Court must on summary judgment, Baier presents the following facts. After his surgery, Baier returned to work on October 26, 2011 with restrictions, including working for only limited periods of time up to 40 hours a week, and continuing his rehabilitation. (Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶ 96.) Baier notified Oakbrook Toyota of his work restrictions—he provided it with letters from his physician, and he verbally explained his limited work hours to his supervisor Syed. (*Id.* ¶¶ 97, 98.)[6]

Nevertheless, when Baier returned to work, his written schedule listed his hours as 8:00 a.m. to 9:00 p.m. daily, six days a week. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 44.) Syed repeatedly asked Plaintiff how long it would take until he was "100 percent." (Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶ 103.) When Plaintiff complained to Syed about having to work until midnight, Syed replied, "that's your job." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 44, 50.) Baier took that to mean he should keep quiet and work—he worked ten to twelve hours each day after his return from surgery, and only worked one eight hour day. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 44.)

Shortly after filling in for Alex Syed as Baier's supervisor, John Barrett told Plaintiff, "don't die at the desk or I am going to drag you outside and throw you in the ditch next to the road." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 71.) Oakbrook Toyota fired Plaintiff shortly thereafter. (Id. ¶¶ 59, 71.) Viewed in the light most favorable to Baier, there is

---

[6] Defendants contest this fact, in part because a nurse signed the letter stating that Baier's work should be limited to 40 hours per week, not Plaintiff's doctor. (Def.'s Resp. to Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶ 96.) Oakbrook Toyota, however, had a duty to inform Baier if it believed his medical certification was insufficient. *See* 29 C.F.R. § 825.305(c) ( "[t]he employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient.") "If a certification is incomplete or insufficient, the employer must provide the employee an opportunity to cure the deficiency." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 837 (7th Cir. 2014).

evidence showing that Baier attempted to work a reduced leave schedule upon his return, only to have Oakbrook Toyota deny him that opportunity and then fire him.

Baier also argues that Oakbrook Toyota failed to provide him with notice of his FMLA rights, which interfered with his ability to exercise them. "Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining the consequences of a failure to meet these obligations." 29 C.F.R. § 825.300(c)(1). Failure to follow that notice requirement "may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." *Salas v. 3M Corp.*, No. 08-c-1614, 2009 WL 2704580, at *11 (N.D. Ill. 2009) (Manning, J.) (citing 29 C.F.R. § 825.300(e)). Further, "[o]nce an employee informs his employer of his probable need for medical leave, the FMLA imposes a duty on the employer to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave." *Burnett v. LFW, Inc*., 472 F.3d 471, 480 (7th Cir. 2006). "In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c). With respect to intermittent or reduced leave, upon the employer's request, "[a]n employee shall advise the employer…why the intermittent/reduced leave schedule is necessary and of the schedule for treatment, if applicable. The employee and employer shall attempt to work out a schedule for such leave that meets the employee's needs without unduly disrupting the employer's operations." 29 C.F.R. § 825.302(f).

The evidence in the light most favorable to Baier shows that he requested leave under the FMLA to recover and rehabilitate after his surgery, but that Oakbrook Toyota provided him with no information with respect to working a reduced leave schedule. (Pl.'s L.R. 56.1 Add'l Stmt. of

Material Facts ¶¶ 91, 93, 96-98.)  Pamela Bockwinkle, Oakbrook Toyota's Comptroller, Chief

Financial Officer, and human resources supervisor, was responsible for processing Plaintiff's

FMLA paperwork, but she did not provide Baier with any written information relating to his

FMLA benefits.  (*Id*. ¶¶ 92-94.)  She also had not heard of "intermittent family leave" under the

FMLA.  (*Id*. ¶ 95.)  The parties have not provided any evidence that anyone at Oakbrook Toyota

discussed Baier's right to take a reduced leave schedule with him—in fact, no one at Oakbrook

Toyota may even have been aware of Baier's right to take reduced leave.  Drawing all reasonable

inferences in favor of Baier, Oakbrook Toyota did not provide him with the required notice

under the FMLA, it did not follow up with him to obtain the necessary details of the leave he

sought to take, and it did not attempt to work out a reduced leave schedule with him after he

submitted his work restrictions.  (*Id.* ¶¶ 91-98); *see also* 29 C.F.R. §§ 825.302(c), (e), (f).

In short, Baier presents sufficient evidence that Oakbrook Toyota denied his attempts to

work a reduced schedule, and that Oakbrook Toyota did not provide him with the information

required by the FMLA relating to his ability to work a reduced schedule.  Accordingly, there is a

material question of fact with respect to whether Oakbrook Toyota and Barrett interfered with

Baier's right to work a reduced leave schedule under the FMLA.

## 2.  Restoration

Baier argues that Oakbrook Toyota also denied him benefits under the FMLA by

terminating him thirteen days after he returned from leave, which denied him the right to be

restored to his general sales manager position.  "As a general matter, 'employers cannot use the

taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or

disciplinary actions...'"  *Pagel v. TIN*, *Inc*., 695 F.3d 622, 629 (7th Cir. 2012) (quoting (29

C.F.R. § 825.220(c)).  An employee's right to reinstatement, however, is not absolute.  *Goelzer*

*v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010).  Defendants "may present evidence

to show that the employee would not have been entitled to his position even if he had not taken leave." *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 636 (7th Cir. 2009). "In other words, 'employers may fire employees for poor performance if they would have fired them for their performance regardless of their having taken leave.'" *Pagel v. TIN, Inc.*, 695 F.3d at 629 (quoting (*Ogborn v. United Food & Commercial Workers Union, Local No. 881,* 305 F.3d 763, 768 (7th Cir. 2002)). The question "is whether a jury could find that the defendants did not reinstate [the plaintiff] because [he] exercised [his] right to take FMLA leave." *Goelzer*, 604 F.3d at 993.

Defendants argue that they did not fire Baier for taking leave—they fired him because he had a record of substandard behavior, including the use of profanity. As an initial matter, the parties agree that John Barrett was the sole decision-maker in terminating Baier. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 53.) Defendants assert that Barrett made the decision to terminate Baier based on several considerations, including Baier's cumulative substandard behavior, poor sales leadership, and an incident in which Baier acted unprofessionally and used profanity with salesman Frank Trout, an Oakbrook Toyota employee. (Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 59-60.) Viewing the facts in the light most favorable to Baier, however, there is evidence that when Barrett made the decision to fire Baier, Barrett claims he only considered the incident with Frank Trout—nothing else.[7] (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 59-60.) As the Court must draw every reasonable inference in Baier's favor at this stage, the Court will treat the Trout incident as the sole basis for Barrett's termination.[8]

---

[7] The following question and answer took place at Barrett's deposition: Q. I just want to be clear, that's the sole reason you terminated [Baier] was the Frank Trout incident? A. Yes. (R. 53-2, Dep. of John Barrett, at 221.)

[8] Plaintiff also presents evidence contesting each of Defendants' other purported bases for his termination. (*See generally* Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 52-58.)

Baier argues that Oakbrook Toyota used the Trout incident as a pretextual basis for terminating him. *See Pagel v. TIN, Inc.*, 695 F.3d at 627, 629-630 (noting role that pretext evidence can play in supporting FMLA interference claim and denying summary judgment to employer). Baier denies that he swore at Trout during the incident, and another Oakbrook Toyota employee who witnessed the event, Robert Jackson, also denies that Plaintiff used profanity with Trout. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 59.) Jackson even refers to the entire incident as a "set-up." (*Id.*); (R. 69-1, Pl.'s Resp. Ex. A, Jackson Dep., at 50-53, 58.) Jackson observed Barrett huddling with Trout, and then saw Barrett indicate to Trout that he should go to the sales desk, an area where Trout was not permitted. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 59); (R. 69-1, Pl.'s Resp. Ex. A, Jackson Dep., at 49-53.) Jackson states that Baier, who was very weak and frail, then had to repeatedly tell Trout to leave the sales desk. (*Id.*) Although Baier did not use profanity with Trout, Barrett fired him the next day for doing so. (*Id.*); (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 59.) Finally, Baier presents evidence that foul language is commonplace at Oakbrook Toyota, and that Baier is the only employee who Oakbrook Toyota has ever fired for the use of profanity. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 61-62.) Accordingly, Baier presents a material issue of fact as to whether Oakbrook Toyota's stated reason for firing him, the Trout incident, was pretextual.

Defendants next argue that Plaintiff has failed to present any evidence that Oakbrook Toyota terminated him because he exercised his right to take FMLA leave. In response, Baier makes two main points. First, Baier notes that Oakbrook Toyota fired him just thirteen days after he returned from leave. While timing alone is rarely enough on its own to show a sufficient causal connection for a plaintiff to survive summary judgment, it can sometimes raise an

inference of a causal connection when combined with other facts. *Compare O'Leary v. Accretive Health, Inc*., 657 F.3d 625, 635 (7th Cir. 2011) ("temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter"), *with Pagel v. TIN, Inc.*, 695 F.3d at 631 (plaintiff can show a causal connection with "a convincing mosaic of circumstantial evidence," including suspicious timing.)

Second, Baier argues that following his return to work, Defendants made discriminatory comments regarding his health status. A remark can raise an inference of discrimination when it "was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007); *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013); *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652-653 (7th Cir. 2000) (holding that when a decision maker expresses discriminatory feelings around the time of, and in reference to, the adverse employment action, "then it may be possible to infer that the decision maker[] [was] influenced by those feelings in making [his] decision.")

The facts in the light most favorable to Baier show the following: On November 5, 2011, a little over a week after Baier returned to work and shortly after Barrett filled in as his supervisor, Barrett told him, "don't die at the desk or I am going to drag you outside and throw you in the ditch next to the road." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 71.) Four days later, Barrett fired Baier. (Id. ¶ 60.) At a meeting with twenty to twenty-five members of Oakbrook Toyota's sales force to discuss Baier's termination several days afterwards, Barrett questioned how Baier could show up for work wearing a defibrillator. (*Id*. ¶ 77.) Barrett also told Bob Jackson that "[t]here was no F-ing way that Terry Baier was going to drop dead on

[my] watch at Oak Brook Toyota." (R. 69-1, Pl.'s Resp. Ex. A, Dep. of Robert Jackson, at 46.)

If he did, Barrett would take Plaintiff across the street to the country club and put him there.

(*Id*.) Given that Barrett was the sole decision-maker in firing Baier, the content of Barrett's

remarks, and their close temporal proximity to Baier's termination, they could raise an inference

that Oakbrook Toyota terminated Baier because he exercised his rights under the FMLA.

*Teruggi*, 709 F.3d at 661. For these reasons, Baier presents a genuine issue of material fact as to

whether Oakbrook Toyota and Barrett interfered with Plaintiff's rights under the FMLA by not

restoring him to his position at Oakbrook Toyota.

> ### B.      FMLA Retaliation Claim

Plaintiff next argues that Defendants retaliated against him for attempting to exercise his

rights under the FMLA. "Employers are…prohibited from retaliating against an employee that

exercises or attempts to exercise FMLA rights." *Pagel v. TIN, Inc.*, 695 F.3d at 631 (citing 29

U.S.C. § 2615(a)(2)). "In other words, the employer cannot use an employee's use of FMLA

leave as a negative factor in promotion, termination, and other employment decisions." *Pagel v.

TIN, Inc.*, 695 F.3d at 631. In bringing a claim for retaliation under the FMLA, "a plaintiff may

proceed under the direct or indirect methods of proof." *Burnett v. LFW, Inc*., 472 F.3d at 481;

*see also Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014). Here, Plaintiff

does not attempt to argue the indirect method, and proceeds only under the direct method.

"Under the direct method, [the plaintiff] must show: (1) he engaged in a protected

activity; (2) his employer took an adverse employment action against him; and (3) there is a

causal connection between the protected activity and the adverse employment action." *Pagel v.

TIN, Inc*., 695 F.3d at 631; *see also Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014). If

the plaintiff's evidence is contradicted, "the case must be tried unless the defendant presents

unrebutted evidence that he would have taken the adverse employment action against the

plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation." *Burnett v. LFW, Inc*., 472 F.3d at 481. Defendants do not dispute that Baier engaged in a protected activity by taking FMLA leave, and that Oakbrook Toyota took an adverse action against him. Instead, they argue that there is no causal connection between Plaintiff's FMLA leave and Baier's termination.

To meet the causal nexus element, Baier must show either a direct admission from Defendants, or "a convincing mosaic of circumstantial evidence" that permits the same inference. *Pagel v. TIN, Inc.*, 695 F.3d at 631; *see also Malin v. Hospira, Inc.*, 762 F.3d at 564. "The convincing mosaic of circumstantial evidence may include suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Pagel v. TIN, Inc.*, 695 F.3d at 631.

Defendants argue that Plaintiff does not present strong enough circumstantial evidence to survive summary judgment. For the reasons discussed above with respect to Baier's FMLA restoration claim, the Court disagrees. *See Burnett v. LFW, Inc.*, 472 F.3d 471, 482 (7th Cir. 2006) (describing defendants' FMLA interference and retaliation arguments as "essentially identical.") Viewing the facts in the light most favorable to Baier, there is evidence that: a) the timing of Baier's termination was suspicious because he had just returned from FMLA leave; b) his supervisor John Barrett made statements regarding his medical condition from which a retaliatory intent can be drawn; and c) Oakbrook Toyota's stated reason for terminating him was pretextual. Accordingly, the Court finds that Baier also presents a material issue of fact as to whether Oakbrook Toyota and Barrett terminated him in retaliation for his taking FMLA leave.

## C.    Individual Liability of Alex Syed

As a final matter on the FMLA count, Defendant Syed moves for summary judgment as to his individual liability under the FMLA.[9]  Syed argues that even if Oakbrook Toyota denied Baier benefits under the FMLA, Barrett was the sole decision-maker in deciding to terminate Baier—thus, Syed is entitled to summary judgment.  In response, Baier argues that Syed is not entitled to summary judgment because he played an influential role with respect to Plaintiff's FMLA claims.

"Although the issue of individual liability under the FMLA has not yet been directly addressed by the United States Supreme Court or the Seventh Circuit, courts in this district generally agree that individuals can be held liable under the FMLA."  *Austin v. Cook County*, No. 07-c-3184, 2009 WL 799488, at *3 (N.D. Ill. March 25, 2009) (Andersen, J.); *see also Shockley v. Stericycle, Inc.*, No. 13-cv-01711, 2013 WL 5325632, at *3-4 (N.D. Ill. Sept. 19, 2013) (Darrah, J.); *Smith v. Univ. of Chicago Hosp.*, No. 02-c-0221, 2003 WL 22757754, at *6-7 (N.D. Ill. Nov. 20, 2003) (collecting cases).  "The primary rationale for this holding has been that the FMLA tracks word for word the definition of employer used in the Fair Labor Standards Act, 29 U.S.C. § 203(d), which does subject individuals to liability."  *Smith v. Univ. of Chicago Hosp.*, No. 02-c-0221, 2003 WL 22757754, at *6-7 (quotation omitted).  A plaintiff may assert FMLA claims against an individual who had supervisory authority over the plaintiff, and is at least partly responsible for the alleged violation.  *See id.*

Here, the parties agree that while Syed was normally Baier's supervisor, Barrett assumed that role when Syed went on vacation beginning November 4, 2011.  (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 9, 11-13).  Baier also admits that while Syed was away, he was

---

[9] Baier only asserts the FMLA count against Syed; he does not name Syed as a defendant in any of the other three counts.  (*See* R. 14, Am. Compl.)

not consulted or contacted regarding Baier's termination, and Barrett, acting as the sole decision-maker, fired Baier. (*Id.* ¶¶ 18-19, 51, 53.) Although Baier presents evidence that Syed made statements to Baier regarding Baier's condition before he left, Plaintiff does not present any evidence linking Syed's statements to his termination. Accordingly, Baier cannot hold Syed liable on his restoration claim or on his retaliation claim, both of which are premised on Baier's termination. The Court grants Syed's motion for summary judgment as to those claims.

As to Baier's interference claim, as discussed above in the Court's FMLA interference analysis, Baier presents evidence that Oakbrook Toyota denied him the opportunity to take a reduced leave schedule, and that before Syed went on vacation he had supervisory authority over Baier and was at least partly responsible for that violation. Viewing the facts in the light most favorable to Baier, for example, Baier verbally explained his restricted work hours to Syed, Syed repeatedly asked Baier how long it would take until he was "100 percent," and when Baier complained to Syed about having to work until midnight, Syed replied, "that's your job." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶¶ 44, 50, 97-98, 103.) Baier understood Syed's response to mean he should keep quiet and work—he worked ten to twelve hours each day after his return from surgery, and only worked one eight hour day. (*Id.* ¶ 44.) These events took place before Syed left on vacation on November 4, 2011, when Baier was still reporting to Syed. Accordingly, Syed's motion for summary judgment is denied as to the FMLA interference claim.

## II.    Count II – ADA Claim

Baier next asserts a claim for discrimination under the ADA solely against Oakbrook Toyota. "The ADA prohibits discrimination against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Burnett v. LFW, Inc.*, 472 F.3d at 483 (citing 42 U.S.C. § 12112(a)). To bring a successful claim, Baier must show that, "(1) he is 'disabled'; (2) he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (quoting *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008)). Oakbrook Toyota does not contest either of the first two elements,[10] and moves for summary judgment only on the grounds that Baier cannot show he suffered an adverse employment action because of his disability.

As with a retaliation claim under the FMLA, a plaintiff alleging discrimination under the ADA may proceed under either the direct or indirect method of proof. *Teruggi*, 709 F.3d at 659. Again, Baier has chosen to proceed using the direct method with circumstantial (rather than direct) evidence. To succeed, Baier "must offer evidence from which an inference of discriminatory intent can be drawn, such as, '(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id*. at 659-660 (quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). "A party may combine these various types of evidence to present a 'convincing mosaic' of circumstantial evidence from which a factfinder can make a reasonable inference of discriminatory intent." *Teruggi*, 709 F.3d at 660 (quotation omitted).

---

[10] "Disability" is defined to include, a "physical or mental impairment that substantially limits one or more major life activities…" 42 U.S.C. § 12102(1). A heart condition can meet that definition. *See* 29 C.F.R. § 1630.2(h)(1) (defining "physical or mental impairment" as "[a]ny physiological disorder or condition…affecting one or more body systems, such as…cardiovascular…")

The evidence must show more than just a pretextual reason for termination, it "must itself show that the decisionmaker acted because of the prohibited animus." *Id*. at 661 (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)).

As discussed above in the analysis of Baier's FMLA interference claims, Plaintiff presents evidence that the timing of his termination coincided with the onset of his heart problems, the decision-maker for his firing John Barrett made discriminatory statements regarding his condition, and Oakbrook Toyota offered a pretextual reason for his termination. Although that discussion addressed discrimination under the FMLA, the evidence applies with equal force in the ADA context. Viewing the facts in the light most favorable to Baier, Oakbrook Toyota terminated him shortly after he revealed that he had a heart condition, took leave for open heart surgery, and then asked for work restrictions upon his return because of his health. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 17); (Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶¶ 89-90, 96.) Barrett's comments regarding Baier also apply in the ADA context. Barrett, for example, told Baier "don't die at the desk or I am going to drag you outside and throw you in the ditch next to the road." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 71.). Barrett also told Bob Jackson shortly after he fired Baier, "There was no F-ing way that Terry Baier was going to drop dead on [my] watch at Oak Brook Toyota." (R. 69-1, Pl.'s Resp. Ex. A, Dep. of Robert Jackson, at 46.) If he did, Barrett would take Plaintiff across the street to the country club and put him there. (*Id*.) These comments all relate to Baier's disability, and the decision-maker for his termination made them at or around the time Oakbrook Toyota fired him. *See Teruggi*, 709 F.3d at 661 ("[t]o raise an inference of discrimination, comments must be (1) made by the decision maker; (2) around the time of the decision; and (3) in reference to the adverse employment action.") (quoting *Hemsworth v.*

*Quotesmith.Com, Inc.*, 476 F.3d at 491). Accordingly, Baier presents an issue of material fact to defeat Oakbrook Toyota's motion for summary judgment on his ADA claim.

## III.   Count III – ADEA Claim

Baier's next claim is that Oakbrook Toyota terminated him because of his age in violation of the ADEA. "The ADEA prohibits an employer from discharging an individual because of his age." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d at 490 (citing 29 U.S.C. § 623(a)(1)). "To establish a claim under the ADEA, a plaintiff-employee must show that the protected trait (under the ADEA, age) actually motivated the employer's decision—that is, the employee's protected trait must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Id.* (quotation omitted). At summary judgment, a plaintiff must show evidence "that age was a but-for cause of the employment action." *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). Baier attempts to show age discrimination under the same direct method of proof he uses for his FMLA and ADA claims, again using circumstantial evidence.[11] *See id.* (noting that a plaintiff can demonstrate age discrimination claims through either the direct or indirect methods of proof, and that under the direct method a plaintiff can present either an admission by the employer or a "convincing mosaic" of circumstantial evidence). Baier, however, has failed to present evidence that Oakbrook Toyota terminated him because of his age.

Baier attempts to show discrimination through comments made by Syed and Rohrman. Viewing the facts in the light most favorable to Baier, Syed frequently called him "old man" or

---

[11] Although Plaintiff notes in passing that he was 60 years old at the time of his termination and was replaced by a younger colleague, he does not attempt to use the indirect method of proof to argue that he was terminated in violation of the ADA. That would require Plaintiff to show that: (1) he is in the protected age group; (2) he was performing his job satisfactorily; (3) he suffered a materially adverse employment action, and (4) his job duties were absorbed by employees who were not members of his protected class. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d at 492. Accordingly, Plaintiff has waived that argument.

"geezer." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 75.) Bob Rohrman did not

call Baier by name, but instead called him "old and senile," "old man," and "old bastard, old

coot." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 75.) As previously discussed,

however, the parties do not dispute that Barrett was the sole decision-maker in Baier's

termination. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 53.) Statements made by

someone other than the decision-maker generally do not suffice as evidence of discriminatory

intent, unless the declarant had "singular influence" over the decision-maker, and "used that

influence to cause the adverse employment action." *Martino v. MCI Commc'n Servs.*, 574 F.3d

447, 452 (7th Cir. 2009). Barrett did not make any of these statements, and Baier does not argue

that either Syed or Rohrman exercised "singular influence" over Barrett to cause his termination.

Additionally, Plaintiff's evidence on this issue does not come from his deposition

testimony—it comes from the testimony of Robert Jackson, one of his co-workers. At Baier's

deposition, he admitted that no one ever said anything to him to make him feel as though his age

was a problem, including Barrett, Rohrman, and Syed. (Def.'s L.R. 56.1 Stmt. of Material Facts

¶ 75); (R. 61, Def.'s Am. Mot. Ex. A., Baier Dep., at 150-151.) Although the Court must

construe the evidence in the light most favorable to Baier, it is significant that he does not point

to any age-related comments made directly to him. Plaintiff also cannot rely on suspicious

timing to show age discrimination, as he can to support his claims for FMLA and ADA

discrimination. Oakbrook Toyota terminated Plaintiff shortly after he discovered that he had a

serious heart condition, informed Oakbrook Toyota, and took FMLA leave. (Pl.'s Resp. to

Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 17); (Pl.'s L.R. 56.1 Add'l Stmt. of Material Facts ¶¶

89-91, 96.) There are no such facts to show that the timing of his termination was suspicious

based on his age.

Finally, Baier cites *Futrell v. J.I. Case* for the proposition that no one piece of evidence is needed to support a finding of age discrimination, and that the facts must be treated as a whole. *Futrell v. J.I. Case*, 38 F.3d 342, 347 (7th Cir. 1994). Even viewing the facts in the light most favorable to Baier, however, there simply is not enough evidence for his claim to withstand summary judgment. *See Fleishman*, 698 F.3d 598, 606 (7th Cir. 2012) (affirming grant of summary judgment to employer on ADEA claim where the employee failed to connect stray age-related comments with employer's termination decision).

## IV.  Count IV – Common-Law Defamation

Baier brings his final claim against Oakbrook Toyota and Barrett for defamation under Illinois law. "A statement is defamatory if it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Leyshon v. Diehl Controls N. Am., Inc.*, 407 Ill. App. 3d 1, 6, 946 N.E.2d 864 (1st Dist. 2010) (quoting *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114 (Ill. 2006)). To state a defamation claim, a plaintiff must present facts showing (1) defendants made a false statement about him, (2) defendants made an unprivileged publication of that statement to a third party, and (3) the publication caused damages. *Solaia Tech., LLC v. Specialty Publ'ns Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825 (Ill. 2006). Baier alleges that Barrett made defamatory statements towards him at the November 10, 2011 Oakbrook Toyota sales meeting shortly after Baier's termination. (R. 14, Am. Compl., ¶ 56.) Viewing the evidence in the light most favorable to Baier, Barrett's comments at the sales meeting included the following: Barrett stated that Baier was "unprofessional," used vulgar language, and "was demeaning." (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 77.) He said that Baier was "abusive to salespeople," "mistreated" staff, and had a "demeaning deportment." (*Id.*) Barrett also said that Baier was "swearing and

screaming" at Frank Trout and that "[Baier] was fired because of the way that he talked to Frank Trout."  (*Id*.); (R. 69-2, Dep. of Robert Jackson, at 60-61.)

In their motion for summary judgment, Defendants argue that Barrett's statements are not actionable on three grounds.[12]  First, they are privileged publications of a corporate employer investigating conduct by an employee.[13]  Second, Barrett's statements are true, or at least substantially true.  Third, they are mere opinions, not actionable factual assertions.  The Court will examine each of these arguments in turn.

First, Defendants argue that Barrett's statements are privileged.  "Privileged occasions include situations that involve some interest of the party publishing the statement, such as a corporate employer investigating certain conduct by its employees."  *Popko v. Cont'l Cas. Co.*, 355 Ill. App. 3d 257, 264, 823 N.E.2d 184 (1st Dist. 2005).  "A corporation has an unquestionable interest in investigating and correcting a situation where one of its employees may be engaged in suspicious activity with the company.  Thus, a qualified privilege exists for communications made concerning such an investigation."  *Id*. (citation omitted); *see also Gibson v. Philip Morris, Inc.*, 292 Ill. App. 3d 267, 276, 685 N.E.2d 638 (1st Dist. 1997) (finding that defendant employer had a qualified privilege for the internal communication of statements where it suspected that one of its employees sold certain items in violation of company policy).  In his response, Plaintiff does not contest that Barrett's statements are not privileged; instead, he argues that Barrett abused the privilege, thereby waiving it.

---

[12] Defendants do not argue that Plaintiff fails to show damages.  Thus, the Court does not address that issue.

[13] Defendants do not argue that Barrett's statements were not "publications" because they were made only to other employees of Oakbrook Toyota.  *See Popko*, 355 Ill. App. 3d at 262 ("[S]tate and federal courts in Illinois—in addition to numerous other authorities—recognize that communication within a corporate environment may constitute publication for defamation purposes.")  Accordingly, the Court does not address that issue.

To prove an abuse of the qualified privilege, a plaintiff must show that "there [was] a direct intention to injure [him] or a reckless disregard of the plaintiff's rights." *Popko v. Cont'l Cas. Co.*, 355 Ill. App. 3d at 264. "In order to establish reckless disregard, plaintiff must prove that defendant entertained serious doubts as to the truth of his statements." *Muthuswamy v. Burke*, 269 Ill. App. 3d 728, 732, 646 N.E.2d 616 (1st Dist. 1993); *see also Kuwik v. Starmark Star Mktg. and Admin., Inc.*, 156 Ill. 2d 16, 24-25, 619 N.E.2d 129 (Ill. 1993) (defining "reckless disregard" as publishing a statement despite "a high degree of awareness of probable falsity or entertaining serious doubts as to its truth.") (quotation omitted). "Abuse of the privilege occurs if the publisher does not believe in the truth of the defamatory matter or has no grounds for believing it to be true." *Muthuswamy v. Burke*, 269 Ill. App. 3d at 732. As discussed above in the analysis of Baier's FMLA restoration claim, Baier presents a material issue of fact as to whether Oakbrook Toyota's stated reason for his termination is true—namely, whether he actually used profanity with Frank Trout. Accordingly, he also presents an issue for the jury on whether Barrett abused his privilege. If Barrett told the sales force that Oakbrook Toyota fired Baier because he screamed and swore at Frank Trout, when Barrett knew that Baier did not use profanity with Frank Trout, then Barrett and Oakbrook Toyota would lose their qualified privilege.

The same is true for Defendants' next argument that Barrett's statements are true, or at least substantially true. "Truth is a defense to a defamation action," and only "substantial truth" is required. *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 424, 698 N.E.2d 674 (1st Dist. 1998). "While substantial truth is normally a question for the jury, where no reasonable jury could find that substantial truth had not been established, the question is one of law." *Id.* Again viewing the facts in the light most favorable to Baier, there is an issue of fact as to whether

Barrett's statements regarding Baier's actions are true. Accordingly, summary judgment is inappropriate on that point as well.

Finally, Defendants argue that Barrett's statements are opinions, not actionable factual assertions. Whether a statement is an opinion or fact is a matter of law for the court to decide. *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008). The court considers from the perspective of a reasonable recipient (1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 398, 882 N.E.2d 1011 (Ill. 2008); *Madison*, 539 F.3d at 654. The focus is on verifiability. *Rose v. Hollinger Int'l, Inc.*, 383 Ill. App. 3d 8, 13, 889 N.E.2d 644 (1st Dist. 2008). Additionally, mixed statements of opinion and fact can be actionable. *Hadley v. Doe*, 2014 IL App (2d) 130489, ¶ 48, 12 N.E.3d 75 (2d Dist. 2014). "A 'mixed opinion' is an opinion in form and context that appears to have been based on (defamatory or untrue) facts that have not been stated." *Id*.

Barrett's statement that Baier was "swearing and screaming" at Frank Trout is a definite, verifiable statement. *See* (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 77); (R. 69-2, Dep. of Robert Jackson, at 60-61.) His statements that Baier was "abusive to salespeople," and "mistreated" staff, are at the very least statements of mixed opinion and fact. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. of Material Facts ¶ 77.) The recipients of these communications could reasonably infer that Barrett, as Baier's supervisor, had knowledge of specific facts that supported these statements. This is especially true where Barrett made the statements at a meeting to specifically discuss why Oakbrook Toyota terminated Baier, and Barrett provided a specific, verifiable example at the meeting—that Baier used profanity with Frank Trout. (*Id*.)

As such, Defendants cannot successfully argue that Barrett's statements are non-actionable opinions. For these reasons, the Court denies Oakbrook Toyota and Barrett's motion for summary judgment on Baier's common-law defamation claim.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment in part and denies it in part.

**DATED: November 17, 2014**                    **ENTERED**

AMY J. ST EVE
U.S. District Court Judge