## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Terry A. Baier, | |
| Plaintiff, | Case No. 12 C 8234 |
| v. | |
| Rohr-Mont Motors, Inc., *et al.*, | Judge John Robert Blakey |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter concerns an employment dispute between Plaintiff Terry Baier and his former employer.[1]  It was resolved by a jury trial ending June 12, 2015. Currently before the Court are: (1) Defendants' motion for remittitur and for judgment as a matter of law, [136]; (2) Plaintiff's motion to alter or amend the verdict, [139]; (3) Plaintiff's motion for equitable relief, [140]; (4) Plaintiff's petition for attorneys' fees and costs, [138]; and (5) Plaintiff's motion to strike, [189].

## I.      Background

On October 15, 2012, Plaintiff sued his former employer, Oakbrook Toyota, and two former supervisors, John Barrett and Alex Syed.  *See* [1].  That lawsuit sought to address several incidents that occurred during Plaintiff's employment with Oakbrook Toyota; and it eventually went to trial in June of 2015.  Plaintiff raised the following causes of action with the jury: (1) violation of the Family and Medical Leave Act ("FMLA") for failure to provide notice; (2) violation of the FMLA

---

[1] For ease of reference, this Opinion refers to Plaintiff's former employer, Rohr-Mont Motors, Inc., as "Oakbrook Toyota."

for failure to allow a reduced leave schedule; (3) retaliation under the FMLA; (4) violation of the Americans with Disabilities Act ("ADA"); and (5) defamation. After a two-week trial, the jury found:

| Cause of Action | Liable Parties | Damages Awarded |
| --- | --- | --- |
| (1) Violation of the FMLA for failure to provide notice | Oakbrook Toyota, Alex Syed | $0 |
| (2) Violation of the FMLA for failure to allow a reduced leave schedule | Oakbrook Toyota, Alex Syed | $0 |
| (3) Retaliation under the FMLA | Oakbrook Toyota, John Barret | Back pay: $268,447 Back benefits: $33,750 Interest: $6,043.94 |
| (4) Violation of the ADA | Oakbrook Toyota | Compensatory: $350,000 Punitive: $1,300,000 |
| (5) Defamation | John Barret | Compensatory: $0 Punitive: $200,000 |

The parties filed their post-trial motions on July 7, 2015. Those motions are now fully briefed and will be addressed in turn below.

## II. Defendants' Motion for Remittitur and Judgment as a Matter of Law

This motion makes two requests. First, Defendant Oakbrook Toyota seeks a remittitur lowering the damage award for Plaintiff's successful ADA claim. The Court construes that request as a motion to alter judgment under Federal Rule of Civil Procedure 59(e). *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 433 (2001) (it is the district court's job to "determine, by reference to federal standards developed under Rule 59, whether a . . . remittitur should be ordered").

Second, Defendant Barrett requests judgment as a matter of law under Federal Rules of Civil Procedure 50(a) and (b) regarding Plaintiff's defamation claim. The Court will address each issue separately.

### A.     Remittitur

The jury awarded $350,000 in compensatory damages and $1,300,000 in punitive damages on Plaintiff's ADA claim. Defendant Oakbrook Toyota requests a remittitur capping those damages at either $50,000 or $100,000, pursuant to 42 U.S.C. § 1981a(b)(3). Federal Rule of Civil Procedure 59(e) allows for post-trial motions to alter or amend a judgment, including by way of remittitur. *See Degorski v. Wilson*, No. 04 CV 3367, 2014 WL 3511220, at *1 (N.D. Ill. July 16, 2014). Rule 59(e) motions, however, may not be used to present new theories or arguments that could and should have been presented earlier, or to present evidence for the first time that was available earlier. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995); *U.S. E.E.O.C. v. Custom Companies, Inc.*, No. 02 C 3768, 2007 WL 1810495, at *1 (N.D. Ill. June 21, 2007).

In deciding Rule 59(e) motions, the Seventh Amendment requires that the Court "accord substantial deference to the jury's assessment" of damages. *Spina v. Forest Preserve Dist. of Cook Cnty.*, 207 F. Supp. 2d 764, 771 (N.D. Ill. 2002) (citing *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985)). Nevertheless, "the court must also ensure that the award is supported by competent evidence." *Ramsey*, 772 F.2d at 1313. If the Court finds that damages are excessive, the

proper remedy is remittitur rather than a new trial. *RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832, 835 (N.D. Ill. 2008).[2]

Defendant Oakbrook Toyota argues for a remittitur based on the statutory cap on damages found in 42 U.S.C. § 1981a(b)(3). Section 1981a(b)(3) imposes the following limits on total punitive and compensatory damages available for claims of intentional discrimination under the ADA: (1) for a respondent with 15-100 employees, damages shall not exceed $50,000; (2) for a respondent with 101-200 employees, damages shall not exceed $100,000; (3) for a respondent with 201-500 employees, damages shall not exceed $200,000; and (4) for a respondent with more than 500 employees, damages shall not exceed $300,000. Plaintiff agrees that Section 1981a(b)(3) governs the damage award here, but disputes the number of employees at issue.

Defendants claim that Oakbrook Toyota had either 15-100 or 101-200 employees. Plaintiff disagrees, advancing an argument it has not yet presented throughout the course of this litigation. Plaintiff argues that, under *Worth v. Tyler*, 276 F.3d 249, 259-60 (7th Cir. 2001) and other cases, all the employees of the Bob Rohrman Auto Group ("BRAG") should be considered employees of Oakbrook Toyota because BRAG directed the misconduct of Oakbrook Toyota. Plaintiff therefore claims that Oakbrook Toyota had more than 500 employees for purposes of the statutory cap.

---

[2] Where the trial court finds a damage award erroneous as a matter of law (*i.e.*, for exceeding statutory caps) it may order a remittitur without offering the option of a new trial. *Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 257 (7th Cir. 1990).

Plaintiff's argument fails because it includes new theories and evidence that were not presented at any time prior to judgment in this matter. *See Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007). Section 1981a(b)(3) caps damages based on the employees of the "respondent." Under Section 1981a, the "respondent" is the entity against whom the "action [is] brought by a complaining party." 42 U.S.C. § 1981a(a). Here, Plaintiff did not name BRAG as a respondent, or give any other indication that BRAG's relationship to Oakbrook Toyota would be significant. Plaintiff named Oakbrook Toyota as the respondent in both his EEOC Charge of Discrimination, [14] at Ex. A, and his Complaint. [14] at ¶¶ 6-7. Plaintiff did not name BRAG in either document, nor did he give any indication that BRAG's alleged role would be relevant in any way. *Id*. Further, Plaintiff specifically noted in his Complaint that Oakbrook Toyota had over 100 employees; and in his EEOC Charge he wrote that it had 15-100 employees. *Id*. Plaintiff provided no information about the number of BRAG employees. *Id*. In fact, at no point in this litigation did Plaintiff give any indication that the role of BRAG in directing the conduct complained of, or the number of BRAG employees, would be at issue. The argument that Oakbrook Toyota's employees should include those of BRAG was raised for the first time in Plaintiff's post-trial pleadings. Because Plaintiff gave no indication that the alleged role of BRAG would be relevant, Defendants had no opportunity in discovery to develop evidence negating Plaintiff's argument. To allow Plaintiff to aggregate employees here, when Defendants have had no chance

or reason to develop evidence in support of a counter-argument, would be contrary to law and patently unfair.

Additionally, the authority relied on by Plaintiff to support his aggregation argument is distinguishable from the facts here. In those cases, both the parent company and the subsidiary/affiliate were specifically named as defendants in the lawsuit. *See Worth*, 276 F.3d at 259-260; *Papa v. Katy Industries, Inc.*, 166 F. 3d 937, 940-942 (7th Cir. 1999); *Custom Companies, Inc.*, 2007 WL 1810495, at *11-17. Plaintiff has cited no authority for the proposition that he should be allowed to add a new respondent after the verdict when: (1) he gave no prior indication he would seek to aggregate the employees of the new respondent; and (2) Defendants had no opportunity to develop evidence countering Plaintiff's aggregation approach.

In fact, persuasive case law from other Circuits squarely forbids Plaintiff's approach here. *See Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544 (S.D.N.Y. 2010); *Parrish v. Sollecito*, 280 F.Supp.2d 145 (S.D.N.Y. 2003). In both *Mugavero* and *Parrish*, the plaintiffs sought to aggregate the employees of non-defendant affiliates at the post-trial motion stage for purposes of Section 1981a. The court in each instance denied that argument, holding that it was unfair to add a new "respondent" in the post-trial briefs. *Id.*

Without aggregation, Defendants argue that Oakbrook Toyota had 95-116 employees during the relevant time frame. In their Answer, however, the Defendants admitted that they had more than 100 employees. [33] at ¶ 7. They are bound by their judicial admission and may not introduce evidence to the contrary.

*Help at Home, Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001); *Spina v. Forest Pres. of Cook Cty.*, No. 98 C 1393, 2001 WL 1491524, at *9 (N.D. Ill. Nov. 23, 2001). The Court thus finds that Oakbrook Toyota had 101-200 employees, and damages are capped at $100,000 on Plaintiff's ADA claim.

The next issue is how to apportion the $100,000 between compensatory and punitive damages. Compensatory and punitive damages together must fall within the Section 1981a caps. 42 U.S.C. § 1981a. Although the Seventh Circuit hasn't formally adopted a single approach, in *Lust v. Sealy* the court recommended that courts reduce damage awards pursuant to statutory caps by leaving compensatory damages intact and lowering punitive damages as necessary to bring the total under the cap (rather than reducing the compensatory damages or reducing both pro rata). *Lust v. Sealy, Inc.*, 383 F.3d 580, 589 (7th Cir. 2004). Courts in this District routinely follow this preferred approach. *See Mendez v. Perla Dental*, No. 04 C 4159, 2008 WL 821882, at *5 (N.D. Ill. Mar. 26, 2008), *aff'd in part*, 646 F.3d 420 (7th Cir. 2011); *Custom Companies, Inc.*, 2007 WL 1810495, at *2. While Plaintiff cites case law allowing a pro rata reduction of damages, the *Lust* court specifically considered the issue and declined to adopt that line of cases. This Court will proceed under *Lust*.

For Plaintiff's ADA claim, he was originally awarded $350,000 in compensatory damages and $1,300,000 in punitive damages, for a total of $1,650,000. That number must be reduced to $100,000 under Section 1981a(b)(3).

Applying the test recommended in *Lust*, Plaintiff is entitled to $100,000 in compensatory damages and $0 in punitive damages.

## B.    Judgment as a Matter of Law

Defendants move for judgment as a matter of law on Plaintiff's defamation claim. At trial, the jury found Defendant Barrett liable for defamation and awarded $200,000 in punitive damages. The jury did not award compensatory damages. Defendants argue that punitive damages may not be awarded in the absence of compensatory damages, and therefore the punitive damages award should not stand. The Court disagrees.

While punitive damages generally are not recoverable in the absence of compensatory damages, *Mitchell v. Elrod*, 655 N.E.2d 1104, 1108 (Ill. Ct. App. 1995), the law is different with regard to damages for defamation *per se*. *Moore v. Streit*, 537 N.E.2d 408, 414 (Ill. App. Ct. 1989). The Court in *Moore v. Streit* addressed the same arguments advanced by the parties here. The defendant in *Moore* argued "that the failure of the jury to award any actual damages precludes the award of punitive damages." *Id.* at 411. The plaintiff responded: "in defamation actions, punitive damages may be awarded without any showing of actual damage if the statements giving rise to the cause of action are defamatory *per se* and were made with actual malice." *Id.* The court agreed with the plaintiff, finding that "the absence of actual damage does not preclude plaintiff from recovering punitive damages if the statements were defamatory *per se*, and defendant's liability was established under the . . . actual malice standard. *Id.* at 414. None of the cases

cited by Defendants challenge this conclusion, as they do not address damages for defamation *per se*.

Here, the jury found that Defendant Barrett was liable for defamation *per se*, and that he acted with actual malice. Illinois law recognizes the following categories of statements as defamatory *per se*: (1) words imputing that a person is unable to perform or lacks integrity in performing his employment duties; and (2) words that impute a person lacks ability or otherwise prejudices that person in his profession. *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 590 (Ill. App. Ct. 2015), appeal denied, 39 N.E.3d 1003 (Ill. 2015). The jury here found that Defendant Barrett made statements falling within those categories. *See* [131] at 2; [129] at Instruction 47, 51. The jury also found that Defendant Barrett acted with actual malice. *See* [131] at 2; [129] at Instruction 47, 52. Because Defendant Barrett was found liable for defamation *per se* with actual malice, the "absence of actual damage does not preclude plaintiffs from recovering punitive damages." *Moore*, 537 N.E.2d at 414. Consequently, Defendants' motion for judgment as a matter of law is denied.

## III.    Plaintiff's Motion to Alter or Amend the Verdict

In his motion to alter or amend the verdict [139], Plaintiff asks that the Court assess nominal damages for defamation if the Court finds that such damages are required to support an award of punitive damages. In light of the Court's decision to allow punitive damages, Plaintiff's motion to alter or amend [139] is denied as moot.

## IV.   Plaintiff's Motion for Equitable Relief

In his motion for equitable relief, Plaintiff requests: (1) an award of liquidated damages on his FMLA claim; and (2) an award of pre-judgment interest on his ADA claim.

### A.   Liquidated Damages

The FMLA provides for a liquidated damages award equal to the amount of compensatory damages and prejudgment interest. 29 U.S.C. § 2617(a)(1)(A)(iii); *Ryl-Kuchar v. Care Centers, Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009).   Liquidated damages are presumed unless the employer demonstrates that it acted reasonably and in good faith. *See Holder v. Illinois Dep't of Corr.*, 751 F.3d 486, 498 (7th Cir. 2014); 29 U.S.C. § 2617(a)(1)(A)(iii).   The employer "bears a substantial burden in showing that it acted in good faith and with reasonable grounds to believe that its actions did not violate the [statute]." *Bankston v. State of Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995).   Courts have found that the employer failed to meet this burden when: (1) there was sufficient evidence for the jury to rule against the employer; and (2) the evidenced adduced at trial did not establish a good faith basis for the retaliatory action. *See Alcazar-Anselmo v. City of Chicago*, No. 07 C 5246, 2011 WL 3236024, at *6 (N.D. Ill. July 27, 2011).

The jury's verdict here, reached in accordance with the Court's instructions, confirms that Plaintiff prevailed on his FMLA retaliation claim and that Defendants had no good faith basis for their actions.   Defendants present two arguments to counter this finding, neither of which provides evidence that

Defendant Barrett acted reasonably and/or with good faith in deciding to fire Plaintiff. First, Defendants argue that Plaintiff has failed to show their bad faith. This argument is meritless because the burden is upon the Defendants to show good faith and reasonableness. *Ulit v. Advocate S. Suburban Hosp.*, No. 08 CV 2698, 2009 WL 5174686, at *1 (N.D. Ill. Dec. 21, 2009) (citing *Bankston*, 60 F.3d at 1254). It is not Plaintiff's responsibility to show bad faith.

Second, Defendants argue that: (1) there is no evidence Plaintiff's FMLA leave had anything to do with his termination; and (2) Defendant Barrett honestly and reasonably believed he could terminate Plaintiff for performance issues and insubordination. This argument is belied by the jury's verdict, which found that Plaintiff's decision to take FMLA leave was a motivating factor in Barrett's decision to terminate Plaintiff, and that Barrett would not have fired Plaintiff in the absence of his FMLA leave. *See* [129] at Instruction 31; [131] at 2. In other words, the jury found that Barrett did not have a good faith basis for firing the Plaintiff, and only did so because of the FMLA leave. Based on the evidence admitted at trial, the Court agrees with the jury's conclusion. Because Defendants have failed to meet their "substantial burden," the Court enters an award of $308,240.94 in liquidated damages.

## B. Pre-Judgment Interest under the ADA

Plaintiff requests an award of pre-judgment interest on the back pay and back benefits he was entitled to under the ADA. The ADA provides that a prevailing plaintiff shall be made whole for the lost back pay and back benefits he

sustained as a result of the defendant's discrimination. 42 U.S.C. § 12117 (incorporating 42 U.S.C. §§ 2000e-5(g)(1)). The prevailing plaintiff may also be awarded prejudgment interest on his back pay and back benefits. *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1143 (7th Cir. 1994); *Best v. Shell Oil Co.*, 4 F. Supp. 2d 770, 773 (N.D. Ill. 1998). The basic purpose of "prejudgment interest is to put a party in the position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss." *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003).

The Court has broad discretion to "craft equitable relief necessary to make whole a plaintiff who has won a verdict in [his] favor." *Pickett v. Sheridan Health Care Ctr.*, No. 07 C 1722, 2009 WL 2407736, at *6 (N.D. Ill. Aug. 4, 2009), *aff'd*, 610 F.3d 434 (7th Cir. 2010). Because ADA back pay and benefits are equitable remedies, they are to be determined by the Court, not the jury. *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F. 3d 495, 500 (7th Cir. 2002); *Pickett*, 2009 WL 2407736, at *7. Pre-judgment interest is likewise left "to the sound discretion of the district court." *See United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993).

The jury awarded $302,197.00 in back pay and back benefits on Plaintiff's FMLA claim. As Plaintiff recognizes, he cannot now seek a double recovery of back pay and benefits based on his ADA claim. The only issue left for this Court, then, is calculating the pre-judgment interest due to Plaintiff on his ADA-based back pay

and damages. Under Seventh Circuit precedent, the Court is required to use the prime rate when assessing pre-judgment interest. *See Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 274 (7th Cir. 1993); *Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 939 (N.D. Ill. 1998). Pre-judgment interest is calculated from the date of termination, *Woods v. Von Maur, Inc.*, No. 09 C 7800, 2012 WL 2062400, at *7 (N.D. Ill. June 7, 2012), and ends when "damages have been ascertained in a meaningful way." *S.E.C. v. Koenig*, No. 02 C 2180, 2009 WL 4043319, at *4 (N.D. Ill. Nov. 23, 2009) (citing *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 836 (1990)). The Court finds that damages in this matter had not been ascertained in a meaningful way until the entry of this Order. The Court's prejudgment interest calculation will therefore cover the period from Plaintiff's termination until March 30, 2016.

Here, Plaintiff was terminated on November 10, 2011. The applicable time period for calculation of pre-judgment interest is therefore 1,602 days, or 4.39 years. There were two different prime rates during that period: (1) 3.25% from November 10, 2011 until December 16, 2015; and (2) 3.50% from December 17, 2015 until March 30, 2016.[3] Plaintiff suggests the following calculation for pre-judgment interest on his ADA back pay and benefits: the back pay and benefit award ($302,197) multiplied by the prime rate, multiplied by the number of years. Because Defendant does not dispute this method, and it appears appropriate to the

---

[3] The Court takes judicial notice of the prime rates as reported in the Wall Street Journal pursuant to Federal Rule of Evidence 201. *See* F.R.E. 201; *Weiland v. Linear Const. Ltd.*, No. 00 C 6172, 2003 WL 21800069, at *4 (N.D. Ill. July 23, 2003).

Court, it will be used here.  Employing the formula set out by the Plaintiff and conceded by Defendants results in the following calculation:

| Back-Pay & Benefits Award | Rate | Time Period | Calculation | Total |
|---|---|---|---|---|
| $302,197 | .0325 | 11/10/2011-12/16/2015<br><br>(1,497 days or 4.1 years) | $302,197 x .0325 x 4.1 | $40,267.75 |
| $302,197 | .0350 | 12/17/15-3/30/16<br><br>(104 days or .28 years) | $302,197 x .0350 x .28 | $2,961.53 |

Thus, Plaintiff is entitled to an award of $43,229.28 in pre-judgment interest on his ADA back pay and benefits.  Because Plaintiff already received pre-judgment interest on back pay and benefits under the FMLA, the Court will subtract that interest from the ADA pre-judgment interest to prevent a double recovery.  On his FMLA claim, Plaintiff received $6,043.94 in pre-judgment interest.  Under the ADA, then, Plaintiff is entitled to $37,185.34 in pre-judgment interest to cover the period between his termination and the issuance of this Order.

Defendants argue that this award is inappropriate because the jury has already awarded pre-judgment interest under the FMLA.  This argument misses the mark.  It is the Court's responsibility to determine pre-judgment interest under the ADA.  *Palos Hills*, 983 F.2d at 799.  Once the Court does so, however, it must

ensure that there is no double recovery when considering any other pre-judgment interest awards. That is what the Court has done here.

## V. Plaintiff's Petition for Costs and Fees

Plaintiff filed a fee petition (the "Petition") requesting costs and fees as provided under both the ADA and the FMLA. [138]. Defendants objected to several aspects of the Petition, and later filed an untimely expert report to support their objections and add new objections. [188]. Plaintiff subsequently moved to strike that report under Local Rule 54.3 ("LR 54.3"). [189]. The Court will first address Plaintiff's motion to strike, and then the Petition.

### A. Plaintiff's Motion to Strike the Expert Report

### i. Overview of Local Rule 54.3

In this District, LR 54.3 governs the filing of fee petitions and related briefing. Although the Court in this matter altered the timing of the normal LR 54.3 sequence, it did not alter the Rule's substantive requirements. Accordingly, a general review of LR 54.3 is instructive. LR 54.3's purpose is to aid the parties in resolving fee disputes without court intervention, or at least to narrow the issues for judicial decision. Under LR 54.3, then, the parties are required to meet and confer regarding attorneys' fees prior to filing a fee motion. LR 54.3(d). During the meet and confer period, the movant (Plaintiff) must provide the respondent (Defendants) with the following information concerning its fee petition, if requested: (1) specific time and work records; (2) the hourly rate claimed for each billing person along with supporting evidence for those rates; and (3) evidence in support of any nontaxable

expenses claimed by movant.  LR 54.3(d)(1-3).  If no agreement on fees is reached after the provision of that information, then LR 54.3(d)(5) requires that the respondent disclose: (1) the total amount of attorneys' fees paid by the respondent; (2) the time and work records of respondent's counsel pertaining to the litigation; (3) evidence of the hourly rates for all billers paid by respondent during litigation; (4) evidence of specific expenses incurred in connection with litigation, along with the total amount of such expenses; and (5) "any evidence the respondent will use to oppose the requested hours, rates, or related nontaxable expenses."  LR 54.3(d)(5)(A-D).

Following the LR 54.3(d)(5) exchange, the parties must specifically identify: (1) all hours, billing rates or related expenses that will and will not be subject to objection; (2) the basis of any objections; and (3) the specific hours, billing rates and expenses that are not objectionable.  Then, the parties must attempt to resolve any remaining dispute.  If unsuccessful, the parties must file a joint statement listing, among other things, the fees and costs sought by the movant, the fees and costs respondent believes should be awarded, and a brief description of the specific disputes remaining between the parties.  LR 54.3(e).  In the absence of other instructions from the Court, LR 54.3 requires that the fee petition and any responses are then filed after the submission of the joint statement.

### ii.  The Course of Fee Litigation in this Matter

Here, the Court altered the timing of the LR 54.3 schedule to accommodate the parties.  Following trial, the Court instructed the parties to file all post-trial

motions by July 7, 2015. [126]. On July 3, 2015, in an attempt to comply with LR 54.3, Plaintiff provided Defendants with his LR 54.3(d) information. Plaintiff then filed his Petition on July 7, 2015. [138]. He did so despite Defendants' failure to fully satisfy their LR 54.3 requirements at that time. In his Petition, Plaintiff requests the following fees:

| Name | Hourly Rate | Hours | Total |
|---|---|---|---|
| Annemarie Kill (10/2012 − 2/2015) | $350.00 | 326.30 | $114,205.00 |
| Annemarie Kill (3/2015 − 6/2015) | $375.00 | 344.80 | $129,300.00 |
| Annemarie Kill (Trial Rate) | $450.00 | 81.10 | $36,495.00 |
| Rebecca Cahan (10/2012 − 2/2015) | $250.00 | 169.10 | $42,275.00 |
| Rebecca Cahan (3/2015 − 6/2015) | $275.00 | 107.50 | $29,535.00 |
| Lauren Chibe | $200.00 | 3.00 | $600.00 |
| Sarah Moravia | $200.00 | .3 | $60.00 |
| Paralegal/Clerk | $75.00 | 145.50 | $10,912.50 |
| Credit | | | ($455.00) |
| **Total Fees** | | | **$362,927.50** |

Plaintiff's Petition also requests $6,189.17 in costs. [138] at 5. In support, Plaintiff submitted, among other things, signed declarations of trial counsel, detailed records

of time billed by counsel, examples of counsel's past fee agreements, and a bill of costs. *Id.* at Exs. A, C, E, F.

On July 9, 2015, the Court ordered that Defendants provide their LR 54.3 information by July 24, 2015. [142]. This information should have included "any evidence that respondent will use to oppose the requested hours, rates, or related nontaxable expenses." LR 54.3(d)(5)(D). On July 24, 2015, Defendants' counsel provided some of that information, including its own rates and correspondence listing general objections to Plaintiff's billings. Defendants did not, however, provide time records for three of their attorneys or any specific evidence that they intended to use in opposition to Plaintiff's fee petition.

Given the paucity of information provided by Defendants, Plaintiff filed a motion for instructions on August 11, 2015. [147]. The Court granted that motion and set a revised LR 54.3 schedule on August 21, 2015. [153]. Under that schedule, Defendants were required to provide Plaintiff a "complete Rule 54.3(d)(5) response" by September 8, 2015; the parties had to submit their Rule 54.3(e) joint statement by September 18, 2015; and memoranda/responses/supplemental fee petitions were due on October 2, 2015. [153].

While Defendants did not timely serve their "complete Rule 54.3(d)(5) response" on September 8, 2015 as required, they did serve Plaintiff, on September 9, 2015, with a four page letter setting out their objections to Plaintiff's fee petition with varying degrees of specificity. *See* [138] at Ex. 1. On September 18, 2015, the parties submitted their Rule 54.3(e) joint statement. [176]. That statement set out

the fees/costs sought by Plaintiff along with Defendants' general objections. *Id*. On October 2, 2015, both parties filed their responses and memoranda regarding Plaintiff's fee petition. [183], [185]. Defendants' response set out their general arguments against fees, but it still did not specifically detail the time entries they were challenging. [185]. Attached to that response, however, was Defendants' September 9, 2015 letter, which included objections that were slightly more specific. [185] at Ex. 1.

On October 2, 2015, Plaintiff also filed his supplemental fee petition concerning fees and costs incurred post-trial. Plaintiff attached to that petition a detailed billing sheet and a summary of time billed. [184] at Exs. A-B. Plaintiff requested the following fees:

| Name | Hourly Rate | Hours | Total |
| --- | --- | --- | --- |
| Annemarie Kill | $375 | 85.20 | $31,950.00 |
| Rebecca Elin | $275 | 43.50 | $11,962.50 |
| Paralegal/Clerk | $75 | 4.40 | $330.00 |
| **Total Fees** | | | **$44,242.50** |

In sum, then, Plaintiff has requested $407,170.00 in fees ($362,927.50 plus $44,242.50). Adding litigation costs of $6,189.17, the total sought by Plaintiff in fees and costs is $413,359.17. [184].

On December 3, 2015, Defendants e-filed a "Notice" attaching several documents. [188]. Those documents included, for the first time, the expert report of John S. Pierce. [188] at Ex. 2. For ease of reference, the December 3, 2015 filing

will be referred to as the "Pierce Filing," and the report itself will be referred to as the "Pierce Report." In the Pierce Filing, the Defendants described the Pierce Report as the "Declaration of John S. Pierce, Esq. in support of Defendants' Opposition to Plaintiff's Petition for Attorneys' Fees and Costs with attached Exhibit." [188]. Although the Pierce Report purported to attach 19 exhibits, none were attached to the filing at that time. *See* [188] at Exs. 1-4.[4]

Notably, the Pierce Report was filed almost three months after the deadline for serving "any evidence the [Defendant] will use to oppose the requested" fees. *See* [153]; LR 54.3(d)(5)(D). Even with the initiation of fee related litigation on July 7, 2015, there is no indication in the record that Defendants informed Plaintiff of their intent to file the Pierce Report at any time prior to December 1, 2015. [188] at Ex. 1. This is true despite ongoing fee related discussions between the parties, the requirement under LR 54.3 that the parties meet and confer regarding fees, the Court's generous briefing schedule, and the Court's specific orders regarding the requisite exchange of LR 54.3(d)(5) information. On the same day that Defendants submitted the Pierce Filing, Plaintiff filed a motion to strike and bar that filing. [189]. Plaintiff argued that the Filing was untimely both under LR 54.3 and this Court's orders; and that Plaintiff was unfairly prejudiced by the late submission. *Id*.

---

[4] The referenced Exhibits were not filed until January 22, 2016, [193], and only then upon the Court's specific request.

### iii.  Use of the Pierce Report

Local Rule 54.3 serves two important functions.  First, the Rule provides the parties with the time and the information necessary to enable them to attempt to resolve any fee disputes without seeking court intervention, in line with the Supreme Court's admonition that a "request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Second, the rule "assists the court by helping to insure that, in the event a fee motion is filed, the parties have narrowed and crystalized their disputes, and have provided the court with the information it needs to make a reasoned ruling on the fee request." *Jones v. Ameriquest Mortgage Co.*, No. 05 C 0432, 2008 WL 4686152, at *3 (N.D. Ill. May 19, 2008).  The rule furthers those goals by requiring that both parties meet and confer, and that the parties exchange specific information regarding fees.  This includes the LR 54.3(d)(5)(D) requirement that the Defendants provide "any evidence the [they] will use to oppose the requested hours [and] rates." LR 54.3(d)(5)(D).

Plaintiff contends that the Pierce Filing should be stricken under LR 54.3 because it is untimely, unfair and prejudicial.  The Court "has broad discretion to require strict compliance with local rules or to relax the rules and excuse noncompliance." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771 (7th Cir. 2013).  Courts in this District commonly find arguments waived for failure to comply with LR 54.3.  For instance, in *Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 WL 4401802, at *2 (N.D. Ill. Aug. 15, 2013), the respondent

argued that the fee petition should be reduced because Plaintiff obtained only limited success at trial. *Id*. The court found that this argument was waived because the respondent did not raise it in the parties' joint Rule 54.3 statement as required. *Id*.

The district court reached a similar conclusion in *Ratliff v. City of Chicago*, No. 10-CV-739, 2013 WL 3418070, at *6 (N.D. Ill. July 8, 2013). There, the defendant had raised a number of objections to specific tasks or fee entries. *Id*. at *5. The plaintiff argued that the defendant waived those arguments by failing to provide detailed objections before the parties filed their joint statement. *Id*. Specifically, the defendant had been required to provide their LR 54.3 materials by February 25th. *Id*. It failed to do so, and instead requested an extension of time. *Id*. The court gave defendant until February 28th to submit its materials. *Id*. at *6. The defendant complied with that deadline, but the court nevertheless found that defendant did not comply with the letter or spirit of LR 54.3 because it failed to identify specific items in dispute or explain why particular items were excessive. *Id*. This precluded "meaningful resolution of the issues." *Id*. In the end, the court concluded that defendant's "lack of compliance with the Local Rule's directives, despite a lengthy extension, has frustrated Plaintiff, the Court, and the legal process. Therefore, the Court concludes that Defendants have waived their specific objections to Plaintiff's fee entries." *Id*.; *see also Zaghloul v. DaimlerChrysler Servs., LLC,* No. 03 C 4499, 2004 WL 2203427, at *3 (N.D. Ill. Sept. 29, 2004) (defendant's

failure to raise objections within the LR 54.3 process resulted in the court awarding plaintiff all costs requested).

The record before the Court compels the same conclusion here. Following trial, the Court set July 7, 2015 as the filing date for all post-trial motions. Prior to filing their Petition on July 7th, Plaintiff provided Defendants with his LR 54.3(d) information. Defendant did not provide a full LR 54.3 exchange at that time. On July 9, 2015, the Court ordered that Defendants provide their LR 54.3 information by July 24, 2015. [142]. Under Rule 54.3, that information should have included "any evidence that respondent will use to oppose the requested hours, rates, or related nontaxable expenses." LR 54.3(d)(5)(D). On July 24, 2015, Defendants provided some information regarding their own rates, and correspondence containing general objections to billings. Defendants did not provide records for three of their attorneys or any specific evidence they intended to use in opposition to Plaintiff's fee petition. Defendants also did not provide the Pierce Report at that time, or indicate that they intended to submit any expert report. As such, the parties did not have the benefit of meeting and conferring regarding any experts or the Pierce Report itself at that time.

Given the perceived shortcomings in Defendants information, Plaintiff filed a motion for instruction on August 11, 2015. [147]. The Court granted that motion, and ordered Defendants to "serve a complete Rule 54.3 response on plaintiff by September 8, 2015." [153]. The joint report was then due on September 18, 2015, and any additional memoranda were to be filed by October 2, 2014. *Id*. On

September 9, 2015, Defendants sent Plaintiff a letter setting out general objections to Plaintiff's fee petition and a few specifically challenged time entries. Despite the Court's order that Defendants file a "complete Rule 54.3(d)(5) response," which includes "any evidence the respondent will use to oppose the requested hours [and] rates," Defendants provided scant evidentiary support for their objections.[5] They did not provide the Pierce Report.

On September 18, 2015, the parties filed their joint statement. [176]. In that statement, Defendants listed general objections without challenging specific time entries. *Id.* Once again, they did not provide or mention the Pierce Report. *Id.* On October 2, 2015, Defendants filed their response to Plaintiff's fee petition. [185]. That response set out general objections, and attached the September 9, 2015 letter. *Id.* The response failed to include the Pierce Report or indicate that the report would be relied upon by Defendants. Thus, throughout the entire Rule 54.3 process, Plaintiff lacked any opportunity to consider, respond to, or meet and confer regarding the Pierce Report.

Finally, on December 3, 2015, Defendants filed a "Notice" with the Court attaching the Pierce Report. [188]. Defendants did not provide the Pierce Report to Plaintiff until December 1, 2015. [188] at Ex. 1. Moreover, they did not file a motion for extension to allow for their late filing, they did not file a LR 54.3(g) motion for instructions regarding their late filing, and they did not provide any justification for their substantial tardiness.

---

[5]Although Defendants argue that, at some unidentified point, they sent line-by-line objections to Plaintiff's 38-page fee petition, those objections are nowhere in the record and Defendants have not established when those objections and any supporting information were provided. [192] at 4.

Beyond Defendants' procedural violations, the Pierce Report suffers from several substantive deficiencies as well. First, the "expert report" is in the form of an additional brief on Defendants' behalf, advancing a series of arguments based upon case law. The Court, however, already provided a schedule for all fee related briefing. This report appears to be an attempt to circumvent that schedule by submitting a document that serves as a brief nearly a month after the close of briefing, without leave from the Court. Second, the Report relies primarily on non-binding case law from outside of this District, with a particular emphasis on California law. Third, though the report references several exhibits, none were submitted for the Court's review until nearly two months after the report was filed, and only then at the Court's request. Absent those exhibits, the Report only challenged a handful of specific time entries. Fourth, the report raises a number of arguments for the Defendants that were not raised previously in Defendants' fee related filings. Fifth, the report is based upon the review of a limited number of case documents. While Mr. Pierce did review the Plaintiff's time sheets and a handful of pleadings, the Court remains concerned that this limited review fails to adequately capture the complexity of this matter. This includes issues and evidence that were raised and developed by the parties throughout litigation, but never formally briefed. Finally, Pierce proposed a fee reduction of only $88,486.10, in contrast to Defendants' proposed reduction of $232,389.50. *See* [188] at Ex. 2; [176]. Defendants never have explained that almost three-fold discrepancy.

Defendants' repeated delays, their half disclosures, their failure to comply with court orders, their failure to comply with LR 54.3, and the various substantive issues with the Pierce Report all compel the Court to exercise its discretion to strike the Pierce Filing.

Defendants' arguments against this outcome are unavailing. Defendants contend that the Pierce Report was timely because LR 54.3 contains no deadline for the provision of expert reports by the respondent. Therefore, claim Defendants, the deadlines they repeatedly missed are irrelevant. This misunderstands LR 54.3. Local Rule 54.3(d)(5)(D) specifically requires the provision of "any **evidence** the respondent will use to **oppose** the requested hours [and] rates." (Emphasis added). The Pierce Report falls squarely within that requirement. First, the Report is specifically labelled as being offered in "opposition" to Plaintiff's fee petition. [188] at Ex. 2. Second, the Report is being provided as "evidence" by the Defendants. Evidence is defined by Black's Law Dictionary as "something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." EVIDENCE, Black's Law Dictionary (10th ed. 2014). Here, the information in the report is evidence in that it is offered to prove various facts, including that Plaintiff's counsel block billed, billed in large increments, billed for clerical jobs, used inflated rates, argued unsuccessful claims, and used vague task descriptions. Further, the Seventh Circuit routinely describes expert reports as "evidence." *See Gil v. Reed*, 535 F.3d 551, 552 (7th Cir. 2008); *Cons. Coal Co. v. Dir., Office of Workers' Comp. Programs*, 521 F.3d 723, 724-25 (7th Cir. 2008); *Qiao*

*Ling Lin v. Holder*, 441 F. App'x 390, 392 (7th Cir. 2011). The fact that Defendants' evidence was filed in the form of an expert report does not excuse their non-compliance with the Court's orders and LR 54.3.

The Court's decision aligns with the Supreme Court's admonition that a "request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. The Court is concerned that relying upon the Pierce Report would be unfair and prejudicial to Plaintiff. Courts in this Circuit agree that the untimely production of an expert can be highly prejudicial to the opposing party. *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 934 (N.D. Ill. 2008) ("The primary rationale for excluding untimely expert opinions is to avoid an unfair 'ambush' in which a party advances new theories or evidence to which its opponent has insufficient time to formulate a response"); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998). In fact, the "Seventh Circuit has explained that a court has the power to exclude expert testimony, if the expert was not disclosed in a timely manner, because the tardy disclosure prejudices the other party." *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.*, No. 03 C 760, 2004 WL 3021842, at *3 (N.D. Ill. Dec. 30, 2004) (citing *Hill v. Porter Memorial Hosp.*, 90 F.3d 220, 224 (7th Cir. 1996)).

To mitigate these concerns while allowing the use of the Pierce Report would add a great deal of additional litigation to a fee petition schedule already protracted at the parties' request. For example, in permitting use of the Pierce Report, the Court likely would also have to allow at least some of the following additional

measures: (1) the deposition of Mr. Pierce; (2) a *Daubert* challenge to Mr. Pierce's report; (3) the submission of a rebuttal expert report by Plaintiff; (4) a *Daubert* challenge to Plaintiff's rebuttal expert report; (5) the deposition of Plaintiff's rebuttal expert; and (6) additional time for the parties to meet and confer regarding their fee disputes. In light of the foregoing, the Court hereby strikes the Pierce filing and examines the Plaintiff's fee petition without reference to that Filing.

### B. Plaintiff's Petition for Costs and Fees

#### i. Legal Standard

Plaintiff seeks fees and costs as a result of his success litigating claims under the FMLA and the ADA. Under the FMLA, the prevailing party **shall** recover an award of reasonable attorneys' fees and costs. 29 U.S.C. §2617(a)(3). Unlike most other "statutory fee-shifting provisions, §2617 requires an award of attorneys' fees to the plaintiff when applicable. The award is not left to the discretion of the district court." *Franzen v. Ellis Corp.*, 543 F.3d 420, 430 (7th Cir. 2008). Plaintiff, as the prevailing party, also is entitled to an award of reasonable fees under the ADA. 42 U.S.C. § 12205.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court explained the framework for determining reasonable fees. Under *Hensley*, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," often referred to as the "lodestar method." *Id.* at 433. The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the

hourly rates claimed. *Id*. The district court may then, at its discretion, increase or reduce the lodestar amount by considering a variety of factors. *Id*. at 434-35. If a district court elects to reduce a fee award, it must "provide a concise but clear explanation of its reasons." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (internal citation and quotation omitted).

As explained above, the Court will not consider the Pierce Report in its fee analysis. Instead, the Court will rely upon the joint statement, Defendants' September 9, 2015 letter, and Defendants' October 2, 2015 Response in Opposition to Plaintiff's Petition. Those filings include the following arguments for a fee reduction: (1) Plaintiff's counsel used an improper hourly rate; (2) Plaintiff's counsel billed for excessive, unreasonable or duplicative hours; (3) Plaintiff is not entitled to fees on his failed claims; (4) Plaintiff's counsel "block billed"; (5) fees expended in relation to Plaintiff's demotion and the Defendants' financial records were improper; and (6) Plaintiff wrongly submitted bills for clerical work and trial attendance by a paralegal/clerk. The Court will address each argument below.

### ii. Hourly Rates

The first step in determining the lodestar is to assess the reasonableness of the attorneys' hourly rates. *Hensley*, 461 U.S. at 433. The Plaintiff bears the burden of showing that the proposed rate is reasonable. *Id*. A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted). The attorney's "actual billing rate for comparable work is

presumptively appropriate to use as the market rate." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)). Once an attorney provides evidence of his or her billing rate, the burden shifts to the defendant to present evidence establishing "a good reason why a lower rate is essential." *People Who Care*, 90 F.3d at 313. The defendant's failure to present that evidence is "essentially a concession that the attorney's billing rate is reasonable and should be awarded." *Id.* Only if an attorney is unable to provide evidence of his or her actual billing rates should a district court look to other evidence, including rates similarly experienced attorneys in the community charge paying clients for similar work. *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (citing *Spegon v. Catholic Bishop*, 175 F.3d 544, 555 (7th Cir. 1999)).

Here, Plaintiff claims that the normal billing rates of his counsel are reasonable for purposes of his fee petition. The Court finds that Plaintiff has provided evidentiary support for all of his rate requests except for one. The declaration of counsel for Plaintiff (Annemarie Kill) and the attached sample fee agreements show that Kill routinely billed $350-$375 an hour; associates at her firm billed $200-$275 an hour; and paralegals billed $75 an hour. *See* [138] at Exs. A, F. Because Plaintiff has provided evidence of counsel's actual billing rates, and Defendants have not presented evidence showing that a lower rate is essential, the Court finds that the above rates are reasonable.

Plaintiff has not met his burden, however, of providing evidence that $450 an hour is Kill's actual rate for trial work. None of the fee agreements attached to the Petition show that Kill ever received that rate. *See* [138] at F. The only evidence offered in support of the $450 per hour rate is Kill's unsupported statement that the "trial time is the rate appropriate for this case." [138] at Ex. A, ¶ 6. That is insufficient under *People Who Care* and *Mathur* to show that $450 an hour is a reasonable rate under the circumstances. The Court thus will limit Kill's trial rate to the rate that is supported by the evidence – $375 an hour.

Defendants want more, objecting to all hourly rates in excess of $350 for Annemarie Kill. Their objection is based on two arguments: (1) that Kill did not provide evidence of the appropriate rate for other attorneys with comparable skills and experience; and (2) that the fee agreements provided by Kill were "retainer agreements," from which it is difficult to determine an appropriate hourly rate.

With regard to the first argument, Defendants' position misunderstands the applicable rule. Relying on a footnote in *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), Defendants argue that the party seeking fees bears the burden of "produc[ing] satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." According to Defendants, this includes "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and

evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554-55 (7th Cir. 1999).

Defendants' use of *Spegon* is misleading. Immediately after the passage quoted by Defendants, the *Spegon* court explained that the "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate. . . . However, if the district court is unable to determine the attorney's actual billing rate because, for example, the attorney has no fee-paying clients, then the district court should look to the next best evidence." *Id.*; *Mathur*, 317 F.3d at 743. Here, because Kill presented evidence of her actual billing rate for comparable work, that rate ($350-$375) is presumptively appropriate.

Defendants' second argument also fails. Defendants complain that "Baier's counsel has provided samples of retainer agreements with other clients but it is difficult to determine an hourly rate 'of an attorney who uses contingent fee agreements' such as those provided." [185] at 4 (citing *Pickett*, 664 F.3d at 640). As such, argue Defendants, Kill should have been required to submit affidavits of similarly positioned practitioners to demonstrate the applicable market rate. Defendants are wrong. The retainer agreements are not contingency agreements, but set out the hourly rates of the firm along with instructions for paying those rates. [138] at Ex. F. As explained above, all of the hourly rates proposed by Plaintiff are reasonable except for the $450 per hour trial rate for Kill; which will be reduced to $375 per hour based on the evidence before the Court.

### iii. Time that Was Excessive, Redundant, or Duplicative

Defendants argue in their Response to the Petition, [185], and the attached September 9, 2015 letter, that certain of the hours expended by Plaintiff's counsel "were excessive and unreasonable." The Supreme Court emphasized in *Hensley* that counsel for the prevailing plaintiff should "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Put another way, "hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party." *Spegon*, 175 F.3d at 552. Using its discretion, then, "the Court may reduce an attorneys' fee award when the hours billed are excessive in light of the attorneys' experience and the work produced." *Ryan M. v. Bd. of Educ. of City of Chicago*, 731 F. Supp. 2d 776, 790 (N.D. Ill. 2009). If the Court decides to reduce any of the claimed fees as excessive, the goal is to "do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 113 S.Ct. 2205, 2216 (2011).

Defendants challenge four sets of billed hours as excessive, redundant or unreasonable. The challenged entries are:

(1) "Entries on January 29-31, 2013 totaling 10.5 hours for repetitious and excessive basic research by Rebecca Cahan."

(2) "Entries on February 27, 2013 through March 8, 2013 totaling 22 hours for Rebecca Cahan and 28.6 hours for Annemarie Kill researching and preparing response to motion to dismiss for a total of 50.6 hours. Substantial drafting and revising by two lawyers is repetitious and excessive."

(3) "Entries of December 14, 2013 and December 16, 2013 showing a total of 11.5 hours for Annemarie Kill for preparation for deposition of Alex Syed. This is excessive for an experienced trial lawyer."

(4) "Entries from June 14, 2014 through August 15, 2015 time spent researching and responding to defendants' motions for summary judgment. In excess of 230 total hours between Annemarie Kill and Rebecca Cahan. Although there were multiple issues to address on summary judgment, this number of hours represents excessive researching, drafting and revisions by two lawyers which was unnecessary."

[185] at Ex. 1, p. 3. The Court finds that all of the above challenged time entries are reasonable except those related to Plaintiff's response [68] to Defendants' motion for summary judgment.

Based on the Court's review of the record, counsel for Plaintiff expended roughly 200 hours preparing their response brief. A great deal of the time billed in relation to that motion is repetitive, *Schlacher v. Law Offices of Phillip J. Rotches & Assocs.*, P. C., 574 F.3d 852, 858 (7th Cir. 2009) ("overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees"), while the total time spent is excessive and unreasonable. *See Embry v. Colvin*, No. 12 C 3685, 2015 WL 4720106, at *5 (N.D. Ill. Aug. 4, 2015) ("192 hours drafting the motion for summary judgment . . . is plainly excessive"); *Sommerfield v. City of Chicago*, No. 06 C 3132, 2012 WL 5354987, at *12 (N.D. Ill. Oct. 29, 2012), *report and recommendation adopted*, No. 06 C 3132, 2013 WL 139502 (N.D. Ill. Jan. 10, 2013) (sustaining objection to 125.5 hours spent on preparation of a motion for summary judgment).

Plaintiff's response to the motion for summary judgment totaled just 16 pages, and relied on ten exhibits. It addressed issues that are fairly common and

did not require a particularly deep or otherwise complex review of current law. Despite this, counsel for Plaintiff spent approximately 200 total hours preparing their response brief; including 66 hours spent by one attorney on the statement of facts alone. The total time spent by counsel on the response brief is equivalent to one attorney working 40 hour weeks for five weeks. The Court cannot reasonably find that counsel for Plaintiff would have billed the same amount to a paying client. *Spegon*, 175 F.3d at 552. This finding is bolstered by Plaintiff's failure to provide any justification for counsel's excessive time when he had the opportunity in his Memorandum in Support of the fee petition [183]. A reduction in the number of hours billed is required to account for the duplicative and excessive time.

Based upon a review of Plaintiff's response brief and counsel's related time entries, the Court finds that a reduction of twenty percent (40 hours) results in a reasonable amount of time expended (160 hours). The reduction in hours will be executed on a pro rata basis between hours expended by Kill and her associate Rebecca Cahan. Based on this Court's review of the record, Kill completed 55 percent of the work related to the Response brief at $350 an hour. Cahan completed 45 percent of that work at $250 an hour. Thus, the fees sought by Plaintiff will be reduced by: (1) 22 of Kill's hours billed at $350 an hour; and (2) 18 of Cahan's hours billed at $250 an hour. This reduction totals $12,200.

### iv. Reduction in Lodestar due to Claim Failure

Defendants argue that Plaintiff achieved only partial success on his claims, which must result in a reduction of the lodestar amount. A critical factor in

determining the reasonableness of a fee award is "the degree of success" obtained by the prevailing party. *Hensley*, 461 U.S. at 436. Where there is only partial success, it is within the court's discretion to "attempt to identify specific hours that should be eliminated, or . . . simply reduce the award to account for the limited success." *Id.* However, this reduction is proper only where the failed claims are "distinct in all respects from [the plaintiff's] successful claims." *Hensley*, 461 U.S. 424 at 440. Where a lawsuit "consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* Where "plaintiff's claims for relief involve a common core of facts or are based on related legal theories . . . the majority of counsel's time will be devoted to the litigation as a whole, as opposed to any one specific claim . . . As a result, time spent on related claims that ultimately prove unsuccessful should not be automatically excluded from the attorney's fee calculation." *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987). The fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* (citing *Hensley*, 461 U.S. at 435).

The Court must therefore consider: (1) whether Plaintiff has achieved "substantial relief," and (2) whether Plaintiff's failed and successful claims were based on "a common core of facts" or "related legal theories." As to the first question, the Court finds that Plaintiff did obtain substantial relief. The Amended Complaint lists the following claims: (1) violation of the FMLA for failure to provide

notice; (2) violation of the FMLA for failure to allow reduced leave; (3) violation of the FMLA for failure to restore Plaintiff to his previous position; (4) retaliatory termination in violation of the FMLA; (5) violation of the ADA; (6) violation of the Age Discrimination in Employment Act ("ADEA"); and (7) defamation. Plaintiff was successful on claims 1, 2, 4, 5 and 7, with the jury awarding him approximately $2 million in damages.

With regard to the second question, the Court finds that the failed and successful causes of action were all based upon "a common core of facts." Defendants point to three failed causes of action here: (1) the ADEA claim; (2) the FMLA restoration claim; and (3) the FMLA notice claim against Barrett. Each of the failed causes of action involve the same core set of facts as the successful claims: Plaintiff came back to work after taking FMLA leave and was subsequently mistreated and terminated. The Court addresses each failed claim in turn:

(1) The failed ADEA claim was based on Plaintiff's termination, just like the successful ADA and FMLA retaliation claims.

(2) The failed FMLA restoration claim was based on Plaintiff's termination, as were the successful ADA and FMLA retaliation claims.

(3) The failed FMLA notice claim against Barrett was based on Defendants' failure to provide the required FMLA notices, just like the successful FMLA notice claims against Oakbrook Toyota and Alex Syed.

In light of the substantial relief obtained by Plaintiff, and the common core of facts underlying his claims, the Court finds that a reduction based on partial success would be inappropriate.

### v. Block Billing

Defendants argue that counsel for Plaintiff has wrongfully "block billed" and therefore a fee reduction is appropriate. Defendants make this claim abstractly in their September 9, 2015 letter, and do not even raise it in their October 2, 2015 Response to Plaintiff's fee petition. [185]. In the letter, Defendants write: "where time records do not show the time spent on individual tasks, the District Court cannot determine whether the claimed time is reasonable. Block billing is improper." [185] at Ex. 1, p. 3. Defendants do not, however, state their block billing objections with "particularity and clarity" as required. *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985) (the party opposing a fee petition must "state objections with particularity and clarity"); *Sears, Roebuck and Co. v. Menard, Inc.*, 2004 WL 2423964, at *1 (N.D. Ill. 2004) ("parties must come to grips with specific objections to specific aspects of the movant's claim for fees, as opposed to simply jousting in generalities"). If a defendant fails to "specifically object to the requested attorneys' fees, the Court will generally award the requested fees." *Boim v. Quranic Literacy Inst.*, No. 00 C 2905, 2003 WL 1956132, at *7 (N.D. Ill. Apr. 24, 2003). Because Defendants have not cited specific examples of the block billing to which they object, along with explanations for their objections, the Court will not alter the fee award based on vague allegations of "block billing."

Even if the Court were to excuse Defendants' failure to object with particularity, it would nonetheless deny their request to reduce Plaintiff's fee award based on block billing. "Although 'block billing' does not provide the best possible

description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006).  Nonetheless, "courts have reduced or denied attorneys' fees where block billing and vague descriptions have left them unable to discern whether the amount of time spent on each individual task was reasonable." *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012).  Having reviewed counsel's time records here, [138] at Ex. F, the Court finds that the billing entries are sufficiently detailed to allow a determination that those entries are reasonable.  For this additional reason, the Court declines to reduce Plaintiff's fee award based upon block billing.

### vi.  Fees Related to Financial Records and Demotion

Defendants argue that Plaintiff is not entitled to attorneys' fees for time spent on financial records or Plaintiff's unlawful demotion claim.  Defendants' September 9, 2015 letter reads:

> "We also object to all of the time taken in connection with the issue of Baier's alleged unlawful demotion by Mr. Rohrman. Substantial hours were expended in connection with sales records and other financial documents, discovery that was largely irrelevant and was not introduced at trial. Likewise, significant time and effort was spent by you trying to show that sales were not declining during the period of time prior to your client's medical leave. This theory was not fully developed and there should be a reduction in the fee request for this time-consuming item as well as the alleged unlawful demotion issue."  [185] at Ex. 1, p. 3.

The Court will first address the "financial records" issue, and then the "demotion" issue.

As to the financial records, Defendants' objection is meritless because Plaintiff's time spent on financial records was based on Defendants' use of those records as a defense.  Throughout this litigation, Defendants claimed that Plaintiff

was not terminated for discriminatory reasons, but due to "poor sales." This required that counsel for Plaintiff examine Plaintiff's sales records and related financial information. As Judge St. Eve explained at summary judgment in this case, "Defendants assert that Barrett made the decision to terminate Baier based on several considerations, including Baier's cumulative substandard behavior, **poor sales leadership**, and an incident in which Baier acted unprofessionally and used profanity with salesman Frank Trout." *Baier v. Rohr-Mont Motors, Inc.*, No. 12 C 8234, 2014 WL 6434584, at *6 (N.D. Ill. Nov. 17, 2014) (emphasis added). Defendants took a similar stance prior to trial, listing several exhibits concerning the poor sales defense and arguing against a motion *in limine* that would have barred evidence of sales figures. [95] at 4. The Court eventually took Defendants' side, and allowed the use of evidence related to sales figures. [99] at 2. Defendants' argument, then, is that Plaintiff should not have spent time analyzing information related to Defendants' own defense. That argument is not persuasive.

The Court likewise declines to reduce Plaintiff's fee award based on time spent litigating the unlawful demotion issue. The threatened demotion of Plaintiff was not advanced as a separate claim that was abandoned or failed. Instead, it was part of the FMLA retaliation claim. Again, as explained by Judge St. Eve: "Defendants also move for summary judgment specifically on Defendants' threatened demotion of Plaintiff. As Plaintiff notes in his response, Plaintiff does not allege a separate cause of action for his threatened demotion, so the Court does not address that issue." *Baier*, 2014 WL 6434584, at *1 n.2. Because the

threatened demotion was part of the common core of facts underlying Plaintiff's successful claims, the Court will not reduce fees for time expended on that issue.

### vii.  Clerical Tasks by Paralegal/Clerk

Defendants object to the payment of fees for clerical tasks performed by the billing entity "paralegal/clerk."  To award paralegal fees, a court must determine that "the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder."  *Spegon*, 175 F.3d at 553 (quoting *People Who Care*, 90 F.3d at 1315).  Courts have found that "organizing file folders, preparing documents, copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters to be clerical" tasks for which attorney fees should not be awarded.  *Delgado v. Village of Rosemont*, 2006 WL 3147695, at *2 (N.D. Ill. 2006).  In contrast, factual investigation, conducting legal research, summarizing depositions, checking citations, compiling statistical and financial data, preparing court documents, serving process, and discussing the case with attorneys are sufficiently complex tasks to allow the award of fees. *People Who Care*, 90 F.3d at 1315; *Holland v. Barnhart*, 02 C 8398, 2004 WL 419871, at *2 (N.D. Ill. Feb. 3, 2004).  Additionally, time spent by paralegals and clerks simply observing trial can be found unreasonable if not justified in the relevant billing.  *Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1046 (N.D. Ill. 2013).  Based on the foregoing, and the current record of hours billed by Plaintiff's counsel, the Court finds that Plaintiff's counsel

impermissibly billed 78.8 hours of clerical work and trial attendance by paralegal/clerk. Examples of the improper billing include: "prepare file for status hearing," "email to client answer to amended complaint," "pull docs" and "trial before J. Blakey." At $75 per hour, this results in a total of $5,910 improperly billed by the paralegal/clerk entity. Plaintiff's fee award will be reduced by that amount.

### C. Fee Calculation

Plaintiff requested a total of $413,359.17 in costs and fees. However, the following reductions are appropriate: (1) $6,082.60 to account for Kill's unsupported trial rate; (2) $12,200.00 for the excessive time spent by counsel on Plaintiff's Response to Defendants' motion for summary judgment; and (3) $5,910.00 for work improperly billed by "paralegal/clerk." This results in a total reduction of $24,192.60 from Plaintiff's request. As such, the Court awards costs and fees to the Plaintiff in the amount of $389,166.57.

## VI. Conclusion

Defendants' motion for remittitur and for judgment as a matter of law, [136], is granted in part and denied in part. The request for remittitur is granted. Plaintiff's damage award under the ADA is reduced from $350,000 in compensatory damages and $1,300,000 in punitive damages to $100,000 in compensatory damages and $0 in punitive damages. The motion for judgement as a matter of law is denied. Plaintiff's motion to alter or amend the verdict, [139], is denied as moot. Plaintiff's motion for equitable relief, [140], is granted. Plaintiff is entitled to an award of $308,240.94 in liquidated damages under the FMLA, and $37,185.34 in pre-

judgment interest under the ADA. Plaintiff's motion to strike, [189], is granted. The clerk is instructed to strike the Pierce Filings, [188], [193], from the docket. Plaintiff's petition for attorneys' fees and costs, [138], is granted in part and denied in part. Plaintiff is awarded $389,166.57 in costs and fees. The total award to Plaintiff is:

(1) $308,240.94 for back pay, back benefits, and pre-judgment interest under the FMLA;

(2) $308,240.94 for liquidated damages under the FMLA;

(3) $100,000.00 in compensatory damages under the ADA;

(4) $37,185.34 in pre-judgment interest under the ADA;

(5) $200,000.00 in punitive damages for defamation; and

(6) $389,166.57 in costs and fees.

Dated: March 30, 2016                    Entered:


_____
John Robert Blakey
United States District Judge